UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Criminal No. 05-417 (RHK/SRN) |
| **Plaintiff,** | |
| v. | REPORT AND RECOMMENDATION |
| **Richard Louis Ennen, III (01),** | |
| **Marco Anthony Ironi, (02),** | |
| **Defendants.** | |

Jeffrey S. Paulsen, Assistant U.S. Attorney, on behalf of Plaintiff.

Barry V. Voss, Esq., on behalf of Richard Louis Ennen, III (01).

Craig E. Cascarano, Esq., on behalf of Marco Anthony Ironi (02).

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter comes before the undersigned United States Magistrate Judge on Defendant Richard Louis Ennen's ("Defendant Ennen") Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 22) and Defendant Marco Anthony Ironi's ("Defendant Ironi") Motion to Suppress Evidence Obtained through Illegal Search (Doc. No. 33) and Motion to Suppress Statements (Doc. No. 31).[1]  This matter is set to be tried before the Honorable Richard H. Kyle, United States District Court Judge for the District of Minnesota, on March 13, 2006.  This case has been

---

[1] The Defendants' non-dispositive motions are addressed in a separate Order.

referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends that Defendants' motions to suppress evidence (Doc. Nos. 22 and 33) be denied and Defendant Ironi's motion to suppress statements (Doc. No. 31) be denied as moot.

## I. PROCEDURAL HISTORY

On December 13, 2005, a three count indictment was filed against Defendants Ennen and Ironi charging them with one count of Aiding and Abetting Possession with Intent to Distribute Cocaine and one count of Aiding and Abetting Possession with Intent to Distribute Methamphetamine, and charging Defendant Ennen with a third count of Possession with Intent to Distribute Methamphetamine. (See Indictment, (Doc. No. 1)).

At the criminal motions hearing, Defendants were present and represented by counsel. There was no testimony at the hearing, but Government Exhibits 1 and 2 were received into evidence. (See Exhibit List, (Doc. No. 46), Gov. Ex. 1, Search Warrant Application, Supporting Affidavit, and Search Warrant for residence, vehicle, and person; Gov. Ex. 2, Search Warrant Application, Supporting Affidavit , and Search Warrant for residence).

Defendant Ironi moves to suppress any statements he made (Doc. No. 31), as well as any evidence seized during the Roseville search in this case. (Doc. No. 33). Defendant Ennen moves to suppress any evidence seized as a result of two searches conducted in this case. (Doc. No. 22). At the motions hearing and through its response brief to Defendant Ironi's motions, the Government represented that Defendant Ironi made no statements that the Government intends to use in its case in chief. Accordingly, Defendant Ironi's motion to suppress statements (Doc. No. 31) should be denied as

moot. In addition, this Court recommends that Defendants' remaining motions to suppress evidence (Doc. Nos. 22 and 33) also be denied.

## II. FINDINGS OF FACT

There are two search warrants at issue in this case. On November 17, 2005, Sergeant Todd Boelter submitted an application and supporting affidavit for a search warrant for a residence in Roseville, Minnesota, a silver 1999 BMW, and the person of Richard Louis Ennen, III ("Roseville search warrant"). (Gov. Ex. 1). The Roseville search warrant was issued on November 17, 2005, and executed on November 18, 2005. (Gov. Ex. 1). On November 18, 2005, Investigator Jeff Baker submitted an application and supporting affidavit for a search warrant for a residence in Big Lake, Minnesota ("Big Lake search warrant"). (Gov. Ex. 2). The Big Lake search warrant was issued and executed on November 18, 2005.

**The Roseville Search Warrant**

The purpose of the search warrant was to search for and seize controlled substances, documents, monies, and other evidence of controlled substances, as well as firearms and computers. (Gov. Ex. 1). The search warrant included the Roseville residence, the detached garage and storage shed on the residence, a 1999 BMW 312, and the person of Richard Louis Ennen, III, DOB 5/18/1974. (Id.). The supporting affidavit to the search warrant application, submitted by Sergeant Todd Boelter ("Sergeant Boelter"), sets forth the facts related to the investigation. (Id.).

At the time of writing the supporting affidavit, Sergeant Boelter had been a police officer in the state of Minnesota for 20 years, and was, at the time, a sergeant in the West Hennepin Public Safety Department. (Id.). He had had five years of experience as a narcotics investigator with the Southwest

Metro Drug Task Force, and was, at the time, assigned to the West Metro Drug Task Force. (Id.). Sergeant Boelter had conducted or participated in over 350 narcotics investigations/search warrants, and had received training in the investigation and identification of controlled substances by the Minnesota Bureau of Criminal Apprehension and the Drug Enforcement Administration. (Id.).

Within the several months prior to the search warrant application, Sergeant Boelter had gathered information indicating that Richard Louis Ennen, III, was selling cocaine, methamphetamine, and steroids, and that evidence of such activity could be found at his house in Big Lake, his residence in Roseville, on his person, and in his vehicle. (Id.). Sergeant Boelter had received information, several months before the search warrant application, from a Confidential Reliable Informant ("CRI") that a white male named Rich, who was between the age of 30 and 32, approximately five feet eleven inches and 215 pounds, was dealing large quantities of cocaine and steroids. (Id.). The CRI also informed Sergeant Boelter that Rich had a house with his girlfriend in Big Lake, Minnesota, and drove a silver BMW as well as a Ford Mustang. (Id.). Sergeant Boelter was told that Rich used the cars to transport drugs, and kept the money gained from the sale of the drugs, as well as some of the controlled substances at his home in Big Lake. (Id.). In addition, the CRI stated that Rich kept most of the controlled substances at the Roseville residence, and conducted most of the dealing of those substances from that residence. (Id.). The CRI also told Sergeant Boelter that Rich lived in Roseville with a guy named Marco and that his girlfriend in Big Lake was aware that Rich dealt drugs in Roseville. (Id.). The CRI also gave Sergeant Boelter Rich's cell phone number. (Id.).

In addition, within the several months prior to the search warrant application, Sergeant Boelter had received information from a different CRI that a white male named Rich with a possible last name of

4

Brennen, who was in his early 30's, approximately six feet and 210 pounds, was dealing large amounts of cocaine and steroids out of a house in Roseville. (Id.). The CRI drove Sergeant Boelter past the Roseville house and Sergeant Boelter noticed a blue Chevrolet pickup truck in the driveway. (Id.). The CRI stated that Rich also had a home in Big Lake, Minnesota and lived there with his girlfriend. (Id.). The CRI told Sergeant Boelter that Rich had paid for the Big Lake home in cash that he had received from the sale of controlled substances. (Id.). The CRI also stated that Rich drove a silver BMW which he used to transport drugs. (Id.).

Sergeant Boelter stated in the affidavit that both CRIs had provided detailed and accurate information in the past that had resulted in search warrants and the recovery of controlled substances as well as the arrests of individuals selling and possessing controlled substances. (Id.). In addition, Sergeant Boelter stated that the CRIs had provided detailed and accurate information that he had corroborated through his own investigation in this case. (Id.).

Sergeant Boelter discovered through Ramsey County records that the Roseville residence was owned by Marco Anthony Ironi. (Id.). The Department of Public Safety revealed that Marco Anthony Ironi's place of residence was listed as the Roseville residence. (Id.). A review of Marco Ironi's criminal history showed a prior arrest and conviction for Second Degree possession of cocaine by the Minnetonka Police Department in 1994. (Id.).

Sergeant Boelter also filed an administrative subpoena with Sprint on the cell phone number the first CRI had provided. (Id.). The subscriber for that cell phone number was Richard Ennen, and his address was listed as the Big Lake residence. (Id.). A search with the Department of Public Safety revealed that Richard Louis Ennen III listed his address on his driver's license as the Big Lake

residence. (Id.). Richard Ennen is 31 years-old and his physical description is five feet, ten inches and 215 pounds. (Id.). That description matched the description given by both of the CRIs. (Id.). Sergeant Boelter also found that Richard Ennen had a Ford Mustang and a 1999 BMW 312 registered in his name. (Id.). Richard Ennen co-owned the BMW with Tonya Marie Gilmer, who also listed her driver's license address as the Big Lake residence. (Id.). Sergeant Boelter also conducted surveillance at both the Roseville and the Big Lake residences and has seen the 1992 BMW at both houses. (Id.).

Within the two weeks prior to the search warrant application, Sergeant Boelter received information from a third CRI that a white male named Rich who was in his early 30's, about five feet eleven inches, and 200 pounds was dealing large amounts of cocaine and methamphetamine. (Id.). The CRI provided Sergeant Boelter with the same cell phone number for Rich as was provided by the first CRI. (Id.). This CRI also stated that Rich drove a silver BMW with the same Minnesota registration that was listed for Richard Louis Ennen. (Id.). The CRI said that Rich used this BMW to deliver and pick up drugs. (Id.). The CRI also informed Sergeant Boelter that Rich lived in the Big Lake residence with his girlfriend Tonya, and that Tonya was aware that Rich was dealing cocaine and methamphetamine. (Id.). The CRI stated that between five and seven p.m., Rich would drive from Big Lake to a house in Roseville. (Id.). The CRI drove Sergeant Boelter past the Roseville residence and identified it as the house from where Rich sells his drugs. (Id.). The CRI stated that Rich stayed at the Roseville residence with a white male named Marco who was in his early 40's, and also dealt drugs. (Id.). Rich stored most of the cocaine and methamphetamine at the Roseville residence, but kept the money received from the sales at his house in Big Lake. (Id.). He and Tonya had purchased the Big Lake residence with cash received from the sale of controlled substances. (Id.). Sergeant Boelter

showed the CRI a picture of Richard Ennen and his girlfriend Tonya Gilmer, and the CRI identified them both as being the people he had previously named. (Id.). The CRI stated that he had seen a large amount of methamphetamine at the Roseville residence within the previous week. (Id.). In addition, within 72 hours of submitting the application for the search warrant, Sergeant Boelter had received information from that same CRI stating that he had observed Richard Ennen with a large amount of cocaine and methamphetamine inside the Roseville residence. (Id.). The CRI also stated that he saw a large amount of cocaine with Richard Ennen in his silver 1999 BMW. (Id.).

Sergeant Boelter again stated in the supporting affidavit that the CRI had provided accurate information which was corroborated by Sergeant Boelter's own investigation. (Id.). The CRI had also made several controlled buys that had led to the issuance of search warrants and had provided Sergeant Boelter with the names, phone numbers, and addresses of others that dealt controlled substances which Sergeant Boelter had verified. (Id.).

Within 72 hours prior to submitting the search warrant application, the CRI received drug task force money to buy cocaine from Richard Ennen through an unwitting party. (Id.). A task force officer searched the CRI for drugs, money, and contraband prior to the buy and nothing was found. (Id.). The task force officers maintained constant view of the CRI on the way to the meeting spot with the unwitting party, and observed the CRI meet with that party. (Id.). That party and their vehicle were identified by the CRI. (Id.). Surveillance of the Roseville residence was conducted and officers followed the unwitting party to the Roseville residence. (Id.). Officers then observed Richard Ennen arrive at the Roseville residence in his silver 1999 BMW and park in the garage. (Id.). The unwitting party was seen pulling into the driveway and meeting with Richard Ennen before they both went into the house. (Id.).

7

A short while later, officers observed the unwitting party leave the house and drive directly back to the meeting spot where the CRI waited. (Id.). The unwitting party was seen meeting with the CRI and a short time later, leaving the meeting spot. (Id.). The CRI then met with Sergeant Boelter and gave him the suspected cocaine purchased from Richard Ennen through the unwitting party. (Id.). The CRI was again searched after the buy, but nothing was found. (Id.). The suspected cocaine field tested positive for cocaine. (Id.).

Based on Sergeant Boelter's training and experience, he was aware that controlled substances are usually sold by weight and that those dealing in quantities of drugs use scales to weigh out specific amounts of drugs. (Id.). He was also aware that drugs are frequently packaged in clear plastic bags of differing sizes. (Id.). In addition, through his training and experience, Sergeant Boelter knew that drug transactions most often involve cash that is not reported as income on income tax returns. (Id.). Such money earned through the dealing of drugs, is often revealed through deposits of cash into a savings or checking account, or is used to purchase items such as real property, stocks, bonds, and jewelry. (Id.). Sergeant Boelter stated that by seizing records and documentation as to financial worth, a suspected dealer's life style may be compared with his reported income to determine whether the reported income accurately reflects the earned income. (Id.).

In addition, based on his training and experience, Sergeant Boelter knew that dealers often keep records of their drug transactions in their residence and such records often contain customer names, price lists, source supply names, and notes with mathematical figures relating to drug transactions. (Id.). Such records may be stored on computers or can be hid, along with other evidence of drug trafficking, in garages, outbuildings, storage lockers, and vehicles. (Id.). In addition, dealers often use lock boxes,

fire-safe boxes, safes, and other containers to store records, drug paraphernalia, drugs, and/or money earned from the sale of those drugs. (Id.).

In addition, during the execution of a search warrant, Sergeant Boelter was aware that other controlled substances that were not specifically named in the application and search warrant are often found and should also be included in the seizure of all controlled substances. (Id.). Furthermore, Sergeant Boelter was aware that dealers often use cell phones, pagers, telephones, and answering machines to facilitate their drug trafficking. (Id.).

Based on the foregoing information and Sergeant Boelter's training and experience, he opined that there was probable cause to believe that the person(s) residing in the Roseville residence and driving the 1999 BMW are using, possessing, and/or dealing controlled substances. (Id.). As a result, Sergeant Boelter requested that a nighttime search warrant be issued to allow for the search of the Roseville residence, the person of Richard Ennen, and the 1999 BMW. (Id.). He requested a nighttime search based on the information received from the CRI, and verified by surveillance, that Richard Ennen deals drugs after eight p.m., and that Richard Ennen uses the cover of darkness to conceal his activities. (Id.). A nighttime search would allow for the arrest of Richard Ennen with the largest quantity of drugs possible as it would prevent him from destroying any drugs that might be found. (Id.).

The search warrant was executed on November 18, 2005, around 8:45 p.m. (Gov. Ex. 2). During the execution of the search warrant, officers recovered, among other things, approximately two pounds of cocaine, six ounces of methamphetamine, approximately $16,000.00, drug notes, packaging, and scales. (Id.).

**The Big Lake Search Warrant**

The purpose of the Big Lake search warrant was to search for and seize controlled substances, documents, monies, and other evidence of controlled substances. (Gov. Ex. 2). The search warrant included the Big Lake residence, the attached garage, and all outbuildings and motor vehicles on the property at the time the search warrant was executed. (Id.). The supporting affidavit to the search warrant application, submitted by Investigator Jeff Baker ("Investigator Baker"), sets forth the facts related to the investigation. (Id.).

At the time of writing the supporting affidavit, Investigator Baker had been a police officer for 15 years, and was, at the time, an investigator with the Sherburne County Sheriff's Department assigned to the Drug Enforcement Administration ("DEA") where his duties included investigating controlled substance violations (Id.). Investigator Baker had conducted numerous investigations into drug trafficking and manufacturing in the past, and had also attended hundreds of hours of training from the DEA and the Bureau of Criminal Apprehension. (Id.). He had also attended the Basic and Advanced Clandestine Laboratory training school in Quantico, Virginia. (Id.).

Investigator Baker stated in his supporting affidavit that he had spoken with Sergeant Todd Boelter and received the information related to the search warrant application and the execution of the search warrant at the Roseville residence. (Id.). Investigator Baker included the information contained in the supporting affidavit for the search warrant to the Roseville residence, as well as the information obtained after the execution of the search warrant, in his supporting affidavit for the search warrant of the Big Lake residence. (Id.). In addition, Investigator Baker stated that, based on that information, he believed there was probable cause to believe that additional controlled substances and proceeds from

the sale of drugs were located at Richard Ennen's Big Lake residence. (Id.).

Investigator Baker requested a nighttime search warrant of the residence, outbuildings, and vehicles on the property. (Id.). He stated that the third CRI had informed law enforcement that Richard Ennen dealt controlled substances after 8:00 p.m. and that information was verified by surveillance. (Id.). In addition, Richard Ennen was arrested in Roseville and officers recovered large amounts of cash and drugs. (Id.). Investigator Baker stated that it was likely that Richard Ennen's arrest would be revealed and any evidence at the Big Lake residence might be destroyed if the execution of the warrant was delayed. (Id.). Surveillance officers had observed Richard Ennen's girlfriend at the residence on November 18, 2005. (Id.).

The search warrant was issued on November 18, 2005, and executed that same day at around 2:00 a.m. (Id.). During the execution of the search warrant, officers recovered a large amount of cash, as well as drugs, drug paraphernalia, and other evidence of drug possession and/or trafficking. (Id.).

### III. DISCUSSION

Defendants now bring motions to suppress the November 17, 2005 search of the Roseville residence as well as the November 18, 2005 search of the Big Lake residence. (Doc. Nos. 22 and 33).

Defendant Ironi argues that the evidence seized at the Roseville residence should be suppressed because the search warrant lacks probable cause and the warrant was illegally executed. (Doc. No. 33). Defendant Ennen argues that the evidence should be suppressed for the following reasons: (1) that the search warrants lacked probable cause in that they failed to establish the informants' basis of knowledge and reliability; (2) that the search warrants lacked probable cause because they failed to establish a nexus between the drug dealing allegedly engaged in by Defendant Ennen, and the two residences and

motor vehicle that were the subject of the search warrants; and (3) that there was insufficient justification for both nighttime searches. (Doc. No. 22). This Court finds, however, that the Defendants' motions should be denied because the search warrants were supported by sufficient probable cause and they were executed legally.          A search warrant protects an individual's privacy interest in his or her home and possessions against unjustified police intrusions. Steagald v. United States, 451 U.S. 204, 213 (1981). To satisfy the warrant requirement, an impartial judicial officer must assess whether the police have probable cause to make an arrest, to conduct a search, or to seize evidence, instrumentalities, fruits of a crime, or contraband. Warden v. Hayden, 387 U.S. 294, 301-02 (1967). Probable cause to search is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983); see United States v. Rankin, 261 F.3d 735, 738-39 (8th Cir. 2001). There is probable cause to issue a search warrant when the affidavit supporting a search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched. United States v. Terry, 305 F.3d 818, 823-24 (8th Cir. 2002).

Whether probable cause exists depends on the totality of the circumstances. Gates, 462 U.S. at 238; see also United States v. Gabrio, 295 F.3d 880, 882-83 (8th Cir. 2002). A court does not evaluate each piece of information independently, but rather considers all of the facts for their cumulative meaning. United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). Because reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination. United States v. Leon, 468 U.S. 897, 913-14 (1984). The Court is to "ensure that the evidence as a

12

whole provides a substantial basis for finding probable cause to support the issuance of the search warrant." Terry, 305 U.S. at 823.  Search warrant applications and their supporting affidavits "should be read with common sense and not in a grudging hyper technical fashion." United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002).  Technical errors in particularity alone are not enough to invalidate a search warrant.  United States v. Valentine, 984 F.2d 906, 909 (8th Cir. 1993) (search warrant valid where there was a typographical error in the address of the residence to be searched but where the affidavit described the target in detail); see also, United States v. McCain, 677 F.2d 657, 660 (8th Cir. 1982).

Probable cause can be established by the personal observations, experiences, and training of a police officer or circumstantial evidence. United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002); United States v. Wells, 223 F.3d 835, 839 (8th Cir. 2000); United States v. Searcy, 181 F.3d 975, 981 (8th Cir. 1999).  Probable cause can also be based on information from an independent source that can be independently corroborated.  Gates, 462 U.S. at 238; Draper v. United States, 358 U.S. 307, 313 (1959); United States v. Young, 184 F.3d 781, 783 (8th Cir. 1999).  "When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant considerations–but not independent, essential elements–in finding probable cause."  Reivich, 793 F.2d at 959 (citing Gates, 462 U.S. at 230); accord, e.g., United States v. LaMorie, 100 F.3d 547, 553 (8th Cir. 1996).  In the end, these considerations "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether in the totality of the circumstances the issuing Judge had a substantial basis for concluding that probable cause existed.  Gates, 462 U.S. at 230, 236.

Furthermore, nighttime searches are justified to protect the investigation, the officers, and the evidence. See United States v. McAtee, 2005 WL 1491214 (N.D. Iowa 2005); see also United States v. Berry, 113 F.3d 121 (8th Cir. 1997).

In this case, there is adequate evidence set forth in the supporting affidavits to each of the search warrants to establish probable cause.

### A. The Search Warrant for the Roseville Residence Was Supported by Sufficient Probable Cause

The affidavit in support of the search warrant for the Roseville residence sets forth the facts and circumstances related to the information received from the multiple CRIs, the investigation done to verify the CRIs' information, and the process of identifying Defendants and their residences. The affidavit explained that information had been received from multiple CRIs that Defendant Ennen was involved in the sale of narcotics, that Defendant Ennen used the Roseville residence which belonged to Defendant Ironi to store and sell the narcotics, that Defendant Ennen used his 1999 BMW to transport the narcotics, and that Defendant Ironi was aware that Defendant Ennen dealt drugs from his Roseville residence and was also involved in the sale of illegal drugs. While that alone might not have been sufficient to establish probable cause for a search warrant, the information was sufficiently corroborated by Sergeant Boelter's own investigation and experiences. Each of the CRIs had previously assisted law enforcement in numerous investigations and criminal convictions in the past, and information received from each of the CRIs had been independently corroborated and found to be true in the past. The second and the third CRIs were able to identify the Roseville residence as the place from where Defendant Ennen dealt illegal drugs. The first and the third CRIs were able to provide Sergeant Boelter

14

with a cell phone number that was verified to belong to Defendant Ennen. In addition, the third CRI was able to positively identify Defendant Ennen from a photo as the individual about whom he was talking.

Furthermore, the third CRI conducted a controlled buy of illegal drugs from Defendant Ennen by way of an unwitting party. This buy was observed by law enforcement in its entirety. The third CRI has stated that, within the previous 72 hours, he had been inside the Roseville residence and had observed Defendant Ennen with a large amount of cocaine and methamphetamine. He had also personally observed amounts of illegal drugs in Defendant Ennen's 1999 BMW.

The information received from the CRIs, and more specifically, the third CRI's observations as well as the controlled buy, provided sufficient probable cause for the search warrant. That the controlled buy took place at the Roseville residence after Defendant Ennen arrived in his 1999 BMW provided ample nexus between the alleged criminal conduct and the residence and motor vehicle.

In addition, the supporting affidavit contains sufficient justification for a nighttime search. Defendant Ennen was believed to deal drugs from the Roseville residence after 8:00 p.m. and waiting until the next morning could have resulted in the loss of evidence through sales that might happen throughout the night or destruction of the evidence through other means.

The affidavit must also be considered in light of Sergeant Boelter's training and experience. Based on that training and experience, Sergeant Boelter had observed that individuals involved in the possession and/or sale of illegal drugs are often in possession of quantities of those drugs, cash, scales, drug paraphernalia, records of customers and sales, as well as other evidence of drug trafficking. Sergeant Boelter has been a police officer for 20 years. The affidavit also noted that based on Sergeant Boelter's training and experience, he believed that there was probable cause to believe that the Roseville

residence contained controlled substances and/or evidence of controlled substances as well as evidence of the sale of such substances.

### B. The Search Warrant for the Big Lake Residence Was Supported by Sufficient Probable Cause

The supporting affidavit to the search warrant for the Big Lake residence set forth the same facts contained in the supporting affidavit to the search warrant for the Roseville residence. In addition, the affidavit contained the results of the search of the Roseville residence which included the seizure of large amounts of cash and controlled substances.

The Big Lake residence was listed as Defendant Ennen's permanent address. Two of the CRIs stated that Defendant Ennen stored money received from the sale of controlled substances at the Big Lake residence. One of the CRIs stated that Defendant Ennen sometimes stored controlled substances at the Big Lake residence as well. The CRI's information that Defendant Ennen was involved in the sale of illegal drugs was corroborated by the controlled buy conducted by the third CRI and observed by the task force officers. It was also corroborated by Defendant Ennen's arrest during the search of the Roseville residence at which time large amounts of drugs and cash were found. The supporting affidavit also contained sufficient justification for the nighttime search of the Big Lake residence. Investigator Baker stated that Ennen had been arrested in Roseville and destruction of any evidence at the Big Lake residence was likely if Defendant Ennen's arrest was revealed before the search of the Big Lake residence could take place. The supporting affidavit also noted that Defendant Ennen's girlfriend was observed at that residence and was aware of Defendant Ennen's alleged illegal drug dealing.

Furthermore, even if it could be found that the either of the search warrants lacked probable

cause, evidence found during the execution of a search warrant need not be suppressed when police obtain the evidence through objective good faith reliance on a warrant. See Leon, 468 U.S. at 920; see also United States v. Rugh, 968 F.2d at 754. "[E]ven if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed." United States v. Johnson, 219 F3d 790, 791 (8th Cir. 2000) (citing Leon, 468 U.S. at 923).

In the instant case, there is no indication that the issuing judge abandoned his judicial role, that Sergeant Boelter or Investigator Baker knew of the falsity or were reckless with regard to the truth of anything in their affidavits, that the warrants were facially deficient, or that the warrants were so lacking in probable cause as to render official belief in it unreasonable. See generally Leon, 468 U.S. at 923 (explaining when the good faith exception does not apply); see also United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991) (finding that the Leon good faith exception applied on a showing of probable cause much less than that exhibited here).

This Court finds that, based on the totality of the circumstances and the facts set forth in the supporting affidavits, there was a substantial basis for finding probable cause to support the issuance of the search warrants. As a result, this Court recommends that Defendants' motions to suppress the evidence found as a result of the searches of the Roseville residence and the Big Lake residence (Doc. Nos. 22 and 33) be denied.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY**

**RECOMMENDED** that:

1. Defendant Ennen's Motion to Suppress Evidence (Doc. No. 22) be **DENIED**;

2. Defendant Ironi's Motion to Suppress Evidence (Doc. No. 33) be **DENIED**; and

3. Defendant Ironi's Motion to Suppress Statements (Doc. No. 31) be **DENIED as moot**.


Dated:   February 22, 2006                         s/Susan Richard Nelson
                                                   SUSAN RICHARD NELSON
                                                   United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 8, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to ten pages. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.